# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0024-24
                A-0169-24
                A-0170-24

LISA BISSELL,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

SAGA GLOBAL CAPITAL
MANAGEMENT, LLC,

      Defendant,

and

RYAN DEAN, individually
and in his official capacity
and KEVIN KLASSEN,
individually and in his official
capacity,

      Defendants-Respondents/
      Cross-Appellants.

_____

LISA BISSELL,

  Plaintiff-Respondent,

v.

SAGA GLOBAL CAPITAL
MANAGEMENT, LLC,

  Defendant,

and

RYAN DEAN, individually
and in his official capacity,

  Defendant-Appellant,

and

KEVIN KLASSEN, individually
and in his official capacity,

  Defendant-Respondent.
_____

LISA BISSELL,

  Plaintiff-Respondent,

v.

SAGA GLOBAL CAPITAL
MANAGEMENT, LLC,

  Defendant,

and

2

A-0024-24

RYAN DEAN, individually
and in his official capacity,

      Defendant-Respondent,

and

KEVIN KLASSEN, individually
and in his official capacity,

      Defendant-Appellant.

_____

Submitted May 19, 2026 – Decided July 16, 2026

Before Judges Gilson, Firko, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0984-19.

Bell, Shivas & Bell, PC, attorneys for appellant/cross-respondent Lisa Bissell in A-0024-24 and respondent Lisa Bissell in A-0169-24 and A-0170-24 (David T. Shivas, of counsel and on the briefs).

Ryan Dean, self-represented respondent/cross-appellant in A-0024-24, self-represented appellant in A-0169-24, and self-represented respondent in A-0170-24.

Kevin Klassen, self-represented respondent/cross-appellant in A-0024-24, self-represented respondent in A-0169-24, and self-represented appellant in A-0170-24.

PER CURIAM

These three appeals involve disputes among plaintiff Lisa Bissell (plaintiff or Bissell), and defendants Ryan Dean (Dean), Kevin Klassen (Klassen), and Saga Global Capital Management, LLC (Saga) (collectively, defendants). Bissell had sought employment with Saga, a company owned and controlled by Dean and Klassen. When she was not hired, she sued defendants alleging Dean had sexually assaulted her, defendants had breached a contract by failing to hire her, and defendants had violated her rights under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, and Title VII, 42 U.S.C. § 2000e to 2000e-17. Dean and Klassen asserted counterclaims, contending Bissell had slandered them, tortiously interfered with their prospective business relationships, and maliciously prosecuted them.

Dean's and Klassen's counterclaims were dismissed as barred by the statute of limitations and the litigation privilege. Bissell's claims were dismissed following a bench trial after the court found that she had failed to prove any of her claims. Bissell now appeals from the final judgment dismissing her claims and an order denying her motion for a new trial. She also challenges a pretrial order, which denied her request to assign a particular judge to preside at trial. Dean and Klassen cross-appeal and have filed separate appeals, challenging the dismissal of their counterclaims, as well as several pretrial orders.

4

We are issuing one consolidated opinion for these related appeals, which were calendared back-to-back. Having reviewed the parties' arguments, the record, and the relevant law, we affirm all orders challenged on these appeals.

I.

We discern the relevant facts from the record, including the evidence presented at trial. We note that the parties filed lengthy briefs and appendices. Many of the contentions raised in the briefs submitted by Dean and Klassen are not relevant to the issues on appeal. Accordingly, we summarize the material facts and the relevant procedural history.

In 2016, Dean and Klassen were trying to launch Saga as a hedge fund. Dean was Saga's chief executive officer and Klassen was the president and managing director. The record is not entirely clear if Saga ever began operations or how much money was invested in Saga's hedge fund. In that regard, after hearing all the evidence at trial, the trial court found that by mid-2017, Saga "had no money."[1]

What is clear is that in late 2016 and early 2017, Bissell sought to work for Saga, either as a direct employee or consultant. Before 2016, Bissell had

---

[1] Klassen testified that Saga had received $300,000 in capital from Canadian sources in mid-2016. He also explained that his goal was to start operating Saga when it had $2 million in investments.

A-0024-24

been an executive with a diamond manufacturer, and she had experience in marketing and branding. Bissell left that company in 2016, and was subject to a non-compete agreement, which prohibited her from working in the diamond industry for two years.

In October 2016, Bissell met Dean while attending a networking event in New York City. Although Bissell had no experience in the hedge fund industry, Dean and Bissell discussed whether her background in dealing with "high[-]end" customers could assist Saga.

Over the next several months, Bissell, Dean, and Klassen discussed Bissell becoming the marketing director for Saga. In November 2016, at Dean's request, Bissell prepared and sent Dean a job description to be the marketing director of Saga. Bissell told Dean she required a base salary of $250,000.

Bissell also set up several meetings to introduce Dean and Klassen to a person she knew who worked in the hedge fund business. Those meetings were designed to assist Dean and Klassen in launching Saga. Additionally, Bissell sent Dean several emails outlining ideas she had for marketing Saga.

In March 2017, Dean texted Bissell to ask if she wanted to attend a hedge fund conference. Bissell agreed and Klassen registered her as Saga's "brand manager" so she could attend the conference. At the conference, Bissell spoke

A-0024-24

with several people, collected their business cards, and gave those cards to Klassen.

While Dean and Klassen were considering hiring Bissell, Dean and Bissell developed a personal relationship, which included engaging in consensual sex. In early November 2016, shortly after they met, Bissell invited Dean to her home and they had consensual sex. Bissell was separated from her husband at that time, and she testified that she and Dean had consensual sex several times between November 2016 and early February 2017.

At trial, Bissell testified that the consensual sexual relationship with Dean ended on February 7, 2017, when Dean allegedly sexually assaulted her. On that day, Bissell had picked up Dean at the Newark Airport, and they had driven back to her home in Cedar Grove. According to Bissell, as she was preparing dinner, Dean video recorded her with his cell phone, asking her repeatedly if she was going to sue him and whether they had a personal relationship before they had a business relationship. Bissell eventually stated: "I'm not suing you. Yes, I concur. . . . We had a personal relationship before a business relationship."

Bissell testified that later that evening, Dean had anal sex with her without her consent. She stated that she screamed at Dean to stop but he refused. She also testified that afterwards Dean told her she "better keep [her] mouth shut

7

A-0024-24

. . . or he would get [her]." Additionally, Bissell testified that her personal and sexual relationship with Dean ended that night and she never invited him to her home thereafter.

Dean denied assaulting Bissell or threatening her. Dean testified that on February 7, 2017, he was tired and "hung over," having just returned from a conference in Miami. He stated that he was too tired to complete sexual intercourse with Bissell, and as a result, Bissell performed oral sex on him. He claims that he then went to sleep while Bissell curled up next to him.

Dean also testified that he could not have had anal sex with Bissell. He explained that he had been diagnosed with a condition and, in 2008, he had surgery. Dean explained he had to be "careful" when he engaged in sex and he could not have anal sex because of the lack of lubrication.

Concerning the recording, Dean testified that he made the video on February 7, 2017, because Bissell had refused to sign a written acknowledgment or discuss the consensual nature of their sexual relationship. He claimed he made the recording to demonstrate that their sexual relationship was not related to their potential business relationship.

After February 7, 2017, Bissell continued to communicate and meet with Dean and Klassen concerning Saga. As already noted, she attended a hedge fund

8

A-0024-24

conference with Dean and Klassen in March 2017. She also sent Dean various emails and text messages, including a text on February 14, 2017, stating: "Happy V-day."

Bissell's potential business relationship with Saga came to an end in August 2017, when she reported Dean's alleged sexual assault to the police and obtained a temporary restraining order (TRO) against Dean on August 9, 2017. At trial, Bissell explained that she had not reported the assault right away because she was afraid of Dean. She also explained that after the assault, she began to suffer from depression, which grew worse over time. In May 2017, just before her husband and son were returning to New Jersey from living in Florida, Bissell texted Dean that they should maintain "radio silence." She explained that the text was her way of trying to permanently break off contact with Dean.

When she obtained her TRO Bissell also filed a complaint under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, seeking a final restraining order (FRO) against Dean. The trial on the FRO was conducted in September 2017. On September 29, 2017, the family court denied Bissell's request for an FRO and dismissed the TRO after determining that Bissell's allegations of domestic violence had not been substantiated.

A-0024-24

While the FRO action was pending, on August 15, 2017, plaintiff received a text from the controller of her former employer. The controller explained he had been contacted by someone who told him that she was being investigated for fraud. Bissell later learned that the person who had contacted her former employer was an investigator hired by Dean's attorney.

Approximately eighteen months after the FRO was denied, in February 2019, Bissell sued Dean, Klassen, and Saga. She alleged that Dean had sexually assaulted her, defendants had discriminated against her because she was a woman, and defendants had failed to hire her to work for Saga. In her complaint, she asserted twelve causes of action, claiming: (1) Dean sexually assaulted her on February 7, 2017; (2) Dean subjected her to intentional infliction of emotional distress; (3) Dean and Klassen subjected her to intentional infliction of emotional distress by having someone contact her former employer in August 2017, and tell the employer that she was being investigated for fraud; (4)-(7) and (10) defendants had violated the LAD by failing to hire her (count four), discriminating against her (count five), sexually harassing her (count six), subjecting her to a hostile work environment (count seven), and retaliating against her (count ten); (8) and (9) defendants had violated Title VII by discriminating against her (count eight), and retaliating against her (count nine);

A-0024-24

(11) Klassen and Saga had aided and abetted Dean in violations of the LAD; and (12) defendants had breached a contract by not hiring her as the marketing director of Saga.

Defendants moved for summary judgment in lieu of answer, but the trial court denied that motion. On August 9, 2019, defendants, represented by counsel, filed an answer and asserted counterclaims. Specifically, defendants asserted seven counterclaims against Bissell: (1) slander related to her allegations of sexual assault; (2) slander related to her accusation that Dean and Klassen had intentionally fabricated false allegations that she was being investigated for fraud; (3) malicious prosecution; (4) abuse of process; (5) intentional infliction of emotional distress; (6) tortious interference with prospective business relationships; and (7) a "[p]rima [f]acie" tort.

Over the next three years, the parties filed numerous motions, many of which sought the same relief. Most of those motions were heard by one judge (the motion judge).

Relevant to the issues on these appeals, the motion judge considered motions related to four issues. In that regard, the motion judge entered the following orders: (1) a January 22, 2021 order, entering a default judgment against Saga; (2) a May 5, 2021 order, deeming requests for admissions admitted

by Dean because he failed to timely respond to those requests; (3) a September 10, 2021 order, granting summary judgment to Bissell and dismissing all seven of defendants' counterclaims with prejudice; and (4) an April 1, 2022 order and a December 1, 2023 order denying reconsideration of defendants' motion for summary judgment.

In February 2024, Bissell moved to have the motion judge assigned as the trial judge. The presiding judge of the Civil Part denied that motion in an order entered on May 1, 2024.

In May 2024, a different judge (the trial judge) conducted a nine-day bench trial on Bissell's claims. Bissell was represented by counsel at trial and Dean and Klassen represented themselves. The trial judge heard testimony from five witnesses: (1) Bissell; (2) Dr. Jeffrey M. Ilardi, a psychiatrist called by Bissell; (3) Dean; (4) Klassen; and (5) Dr. Stephen Nazareth, a urologist called by Dean. Testimony by Mark Faber, a corporate controller with Bissell's former employer, was read into the record. The parties also submitted various documents into evidence, including emails and text messages exchanged among Bissell, Dean, and Klassen in 2016 and 2017.

At trial, Bissell described her background as a marketing executive and her efforts to work with Saga. She also described her relationship with Dean

12

and recounted the alleged sexual assault on February 7, 2017. She went on to describe the depression she suffered after the assault, why she continued to communicate with Dean and Klassen, and her eventual reporting of the assault to the police. On cross-examination, Dean and Klassen challenged her credibility, focusing on the lack of written work product, inconsistencies in her statements, and the absence of a contemporaneous employment complaint about the alleged sexual assault.

Ilardi explained that in 2022 he had had four sessions during which he consulted with Bissell. He testified that Bissell suffered from post-traumatic stress disorder and major depressive disorder and opined those disorders were caused by the alleged assault. Ilardi explained that he could find no other cause for the diagnosed conditions other than the February 7, 2017 incident.

As already explained, at trial Dean denied sexually assaulting Bissell and maintained that he could not engage in anal sex or any kind of violent sexual act. He asserted that the sexual relationship with Bissell was consensual and he claimed she was fabricating the allegations for financial gain. Dean also testified Bissell never performed any work for Saga and that her claims of employment discrimination and retaliation were false.

In his testimony, Klassen stated that Bissell was never an employee or contractor for Saga. He explained that in 2017, Saga had no open employment positions and no money to hire anyone. He also contended that all discussions about compensation were contingent on Bissell obtaining a financial license, which she never did. Like Dean, Klassen denied any discrimination or retaliation against Bissell.

Dr. Nazareth described surgery Dean had undergone in 2008, and the progressive nature of his medical condition that would make it extremely painful and very unlikely that he could have engaged in unlubricated sex. During cross-examination, Dr. Nazareth acknowledged he had not seen Dean in person between 2008 and 2022, had no direct knowledge of Dean's condition in 2017, and that his report was prepared for litigation at Dean's request.

After hearing all the testimony and considering the exhibits admitted into evidence, on May 31, 2024, the trial judge placed his findings of facts and legal conclusions on the record. The trial judge found that Bissell had not established she had been sexually assaulted by Dean. The judge also found that Dean had not threatened Bissell. In making those findings, the judge did not credit Bissell's testimony and found her testimony to be inconsistent and

14

unsubstantiated. Therefore, the judge dismissed with prejudice Bissell's claims of sexual assault and intentional infliction of emotional distress.

In analyzing Bissell's claims of discrimination, the trial judge found that Bissell had never been offered a position with Saga, Saga had not been looking to hire a director of marketing in 2017, Saga had no money to hire an executive employee, and Saga did not seek to hire another marketing director after the discussions with Bissell ended. The trial judge also credited the testimony of Klassen that Bissell was never offered a position at Saga and there had been no agreement on what Bissell would be paid if she was hired.

In connection with dismissing all of Bissell's claims, the trial judge ruled that the admissions by Dean were not controlling. In that regard, the trial court reasoned that because Bissell had failed to establish her claims at trial, the admissions, which did not go to the ultimate issues, did not establish liability of any defendant, including Dean. The trial judge also ruled that the default against Saga was not effective because Saga only operated through Dean and Klassen and the judge found Dean and Klassen had not committed any violations of Bissell's rights.

Consequently, the trial court dismissed all of Bissell's claims with prejudice. On June 4, 2024, the trial court entered a final judgment stating:

"plaintiff did not sustain her burden of proof and the complaint of the plaintiff is dismissed with prejudice against all defendants."[2]

Bissell moved for a new trial and Dean and Klassen moved to reinstate their counterclaims. After hearing argument on August 9, 2024, the trial judge denied both motions, placing his reasons on the record.

The judge iterated that Bissell had failed to prove any of her claims, including the alleged sexual assault and her alleged discrimination and retaliation claims. The judge also explained that he had properly vacated Dean's admissions because Bissell had not proven her claims at trial and could not show any prejudice from the decision to vacate the admissions. In that regard, the trial judge reasoned that even if he had not vacated Dean's admissions, the admitted facts did not establish Bissell's claims, including her alleged damages.

Addressing Dean's and Klassen's motion, the trial judge determined that there was no basis to reinstate their counterclaims. The judge reasoned that defendants' motion was procedurally defective and they had not timely moved to reinstate their counterclaims because their motion was filed after the final judgment had been entered. Therefore, on August 12, 2024, the trial court entered an order denying Bissell's request for a new trial.

---

[2] The final judgment is dated June 3, 2024, but was filed on June 4, 2024.

Bissell now appeals from the orders entered on May 1, 2024, June 4, 2024, and August 12, 2024. In their cross-appeals and separate appeals, Dean and Klassen appeal from the September 10, 2021 order dismissing their counterclaims. They also appeal from several pretrial orders, including a May 3, 2021 order denying a plenary hearing, an August 6, 2021 order denying a motion to dismiss for failure to provide discovery, an August 27, 2021 order denying a stay, a September 10, 2021 order denying a motion to compel production of documents, a December 17, 2021 order denying reconsideration of defendants' motion to compel, and a December 17, 2021 order denying reconsideration of defendants' motion to reinstate their counterclaims.[3]

## II.

We first address Bissell's appeal. On her appeal, Bissell makes four primary arguments. She contends the trial court erred in (1) vacating Dean's admissions of her request for admissions; (2) vacating the default against Saga; (3) not granting her a new trial; and (4) denying her motion to have the motion judge preside at trial.

---

[3] In their briefs and notices, Dean and Klassen list additional orders, but some of those orders seek the same relief as sought in the orders we have listed. Moreover, Dean and Klassen present no arguments warranting reversal of any of the orders they challenge.

A-0024-24

A. Bissell's Claims.

To place Bissell's arguments in context, we begin by analyzing her affirmative claims. All of Bissell's claims were based on two predicate allegations: (1) Dean sexually assaulted her on February 7, 2017; and (2) defendants discriminated against her and failed to hire her as Saga's marketing director.

Those claims were considered and rejected following the bench trial. Appellate courts apply a deferential standard in reviewing factual findings by a trial court. Balducci v. Cige, 240 N.J. 574, 594-95 (2020). "A reviewing court must accept the factual findings of a trial court that are 'supported by sufficient credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). In an appeal from a bench trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015)). "Appellate courts owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court in evaluating the

veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

In contrast, an appellate court reviews de novo the trial court's legal determinations. Serico v. Rothberg, 234 N.J. 168, 178 (2018) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Nevertheless, "appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Griepenburg, 220 N.J. at 254 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

1. The Assault Claim.

A defendant is subject to liability for an assault if he or she intentionally causes harmful or offensive contact with plaintiff and the plaintiff suffers harm. See Model Jury Charges (Civil), 3.10, "Assault and Battery" (rev. Mar. 2015) (stating a person is liable for civil assault when he or she intentionally causes harmful or offensive contact resulting in harm); Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009) (quoting Wigginton v. Servidio, 324 N.J. Super.

A-0024-24

114, 129 (App. Div. 1999)); see also N.J.S.A. 2C:14-2(a)(6) (setting forth the elements of the criminal charge of aggravated sexual assault).

The trial judge found that Bissell was not credible and her allegations of sexual assault were unsubstantiated. In that regard, the court found there was no objective evidence that Dean sexually assaulted Bissell or threatened her. The trial judge also credited Dean's and Dr. Nazareth's testimony concerning Dean's medical condition and found that Dean could not have acted as Bissell alleged. Those findings are supported by the substantial credible evidence presented at the trial. Moreover, the court's legal conclusion that Bissell failed to establish the elements of a sexual assault is consistent with the established law.

2.  The Intentional Infliction of Emotional Distress Claims.

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions caused plaintiff emotional distress; and (4) the emotional distress suffered by plaintiff was so severe that no reasonable person could be expected to endure it. Model Jury Charges (Civil), 3.30F (approved Nov. 1999) (setting forth the elements for plaintiff to prove an intentional infliction of emotional distress claim); see also

20                                                                    A-0024-24

Tarr v. Ciasulli, 181 N.J. 70, 77 (2004) (quoting Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988)).

Bissell alleged that Dean caused her emotional distress by sexually assaulting her. That claim fails because the trial court found Bissell did not prove that Dean sexually assaulted her.

She also alleges Dean and Klassen caused her emotional distress by having an investigator contact her former employer in August 2017, and inform the employer that she was being investigated for fraud. While the trial court did not expressly address this claim, it found that Bissell was not credible and she had not established any of her claims. Moreover, the evidence presented at trial did not establish that Bissell had suffered emotional distress caused by the contact made with her former employer in August 2017.

3.    The LAD and Title VII Claims.

"[T]he LAD is remedial legislation intended to 'eradicate the cancer of discrimination' in our society." Graziadei v. Capital Health Sys., Inc., 482 N.J. Super. 186, 195 (App. Div. 2025) (alteration in original) (quoting Nini v. Mercer Cnty. Cmty. Coll., 202 N.J. 98, 115 (2010)). To prove a prima facie case of gender discrimination or failure to hire based on gender discrimination under the LAD or Title VII, a plaintiff must show (1) she is a member of a protected

class; (2) she was qualified for the position she sought to obtain; (3) she was not hired for the position based on her protected status; and (4) the employer continued to seek out individuals with similar qualifications to fill the position under circumstances that raise an inference of discriminatory action. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005); Schiavo v. Marina Dist. Dev. Co., LLC, 442 N.J. Super. 346, 367 (App. Div. 2015) (citing Victor v. State, 203 N.J. 383, 408-09 (2010)); see, e.g., Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013) (applying the same standard for discrimination claims based on Title VII); Suri v. Foxx, 69 F. Supp. 3d 467, 478 (D.N.J. 2014) (applying these elements in a failure to hire case).

To establish retaliation under the LAD or Title VII, an employee must show (1) she engaged in protected activity known to the employer; (2) plaintiff was subject to an adverse employment action; and (3) causation. Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (quoting Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)); Smith v. City of Atlantic City, 138 F.4th 759, 775 (3d Cir. 2025) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)) (providing these elements for retaliation in Title VII cases); see also N.J.S.A. 10:5-12(d) (explaining it is illegal under the LAD "[f]or any person to take reprisals against any person

A-0024-24

because that person has opposed any practices or acts" prohibited by that statute). Thus, gender discrimination or retaliation require proof of adverse employment action based on plaintiff's gender.

The trial court found that Bissell had not proven gender discrimination because she was not rejected from a specific position with Saga. In that regard, it found Saga never sought to hire anyone else to serve as a marketing director. Accordingly, Bissell failed to show Saga was actively advertising for the position of marketing director, or a person, such as a man who is not part of her protected class, was hired as marketing director. The trial court also found that Bissell was not denied the position based on her gender but rather on the financial instability of Saga.

Those findings are supported by the substantial credible evidence presented at the trial. Those findings also support the legal conclusion that Bissell failed to establish a claim of discrimination either under the LAD or Title VII. See Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 85-87 (1978) (determining plaintiff did not prove a prima facie claim of gender discrimination where "there was simply no opening" for the specific position plaintiff sought); Herman v. Coastal Corp., 348 N.J. Super. 1, 19 (App. Div. 2002) (affirming dismissal of plaintiff's discrimination claim where "there [was] simply no

23

evidence of conduct or adverse employment actions taken against plaintiff based on her gender").

Further, because Bissell did not establish her discrimination claims, she also did not establish a claim of retaliation. Cf. Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 140 (App. Div. 2016) (rejecting plaintiff's retaliation claim where she did not suffer an adverse employment action or any tangible harm).

The evidence at trial also shows that Bissell did not establish her claims of sexual harassment or a hostile work environment. In short, the trial judge did not credit her testimony that she had been sexually assaulted by Dean, and he found she had never worked for Saga and, therefore, was not subject to harassment or a hostile work environment. See, e.g., Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 181, 196 (2008); Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 601 (1993). The trial judge also found that no employment contract had been established between Bissell and Saga.

In summary, the substantial credible evidence at trial supports the trial judge's findings that Bissell did not prove any of her affirmative claims. Applying those factual determinations to well-established law also demonstrates that Bissell did not prove any of her causes of action or damages related to her alleged claims.

B.    Bissell's Arguments.

As noted, Bissell makes four primary arguments in challenging the final judgment and related orders.  An analysis of those arguments establishes that they do not support a reversal of the final judgment or reversal of the two other orders Bissell challenges on this appeal.

1.    The Request for Admissions.

Rule 4:22-1 allows a party to serve requests for admissions on another party concerning the truth of facts relevant to the litigation.  Dewalt v. Dow Chem. Co., 237 N.J. Super. 54, 60 (App. Div. 1989).  "The matter is admitted unless, within [thirty] days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the [requests]."  R. 4:22-1.

Requests for admissions are intended to streamline litigation by weeding out indisputable facts and proof over which there is no contested issue.  Torres v. Pabon, 225 N.J. 167, 184 (2016).  So, "[a] request for admissions will thus serve the relatively limited purpose of eliminating the necessity of proving facts which are or should be uncontroverted."  Essex Bank v. Cap. Res. Corp., 179 N.J. Super. 523, 532 (App. Div. 1981).

Accordingly, requests for admissions are "subservien[t] to consideration of the merits." Gilborges v. Wallace, 153 N.J. Super. 121, 130 (App. Div. 1977), affirmed on this issue, reversed in part on other grounds, 78 N.J. 342, 348, 354 (1978). "[T]he court may permit withdrawal or amendment [of admissions] when the presentation of the merits of the action will be subserved [] and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will be prejudicial to maintaining the action or defense on the merits." R. 4:22-2. The party challenging the withdrawal of the admissions must demonstrate prejudice. Delcampo v. N.J. Auto. Full Ins. Underwriting Ass'n, 266 N.J. Super. 687, 694 (Law Div. 1993).

Because orders on requests for admissions are interlocutory, they may be reconsidered at any time prior to the entry of a final judgment. See Bank v. Lee, 481 N.J. Super. 412, 427 (App. Div. 2025); see also Lawson v. Dewar, 468 N.J. Super. 128, 134-35 (App. Div. 2021) (explaining a trial court has "complete power over its interlocutory orders and may revise them" in the interests of justice any time prior to a final judgment). Moreover, the decision on whether to modify an interlocutory order is within the trial court's discretion. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987).

26

Bissell served Dean with a set of requests for admissions on March 3, 2021. Dean submitted responses on May 12, 2021. The motion judge refused to accept his responses because they were served beyond the thirty-day deadline and, therefore, entered orders deeming the requests to be admitted.

After hearing all the evidence at trial, the trial judge determined that the interests of justice supported vacating Dean's admissions. The trial judge reasoned that the case should be decided on its merits and the evidence presented at trial. The trial judge also determined that Bissell would not be prejudiced by the withdrawal because she had a full and fair opportunity to present all her evidence in support of her claims. In that regard, the trial court found that none of the admissions went to the ultimate issues of whether Bissell had established a claim of sexual assault, a breach of contract, or gender discrimination.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. State v. Medina, 242 N.J. 397, 411-12 (2020); Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). Similarly, we review trial court's decisions to modify or vacate interlocutory orders for abuse of discretion. State v. Puryear, 441 N.J. Super. 280, 293-94 (App. Div. 2015); see also State v. Campbell, 436 N.J. Super. 264, 273 (App. Div. 2014) (explaining "the [trial]

court can [] reconsider its previous decision to admit [] evidence, if subsequent developments support such reconsideration").

In this matter, we discern no abuse of discretion. The requests for admissions did not establish the ultimate issues that Bissell needed to prove her causes of action. Consequently, the record does not show that Bissell was prejudiced because she had a complete opportunity to present her affirmative claims. We also note that the requests for admissions did not establish damages and, therefore, her failure to prove damages at trial was an alternative reason for finding the admissions did not establish all elements of her claims.

We also reject Bissell's argument concerning the law of the case doctrine. The doctrine is a non-binding rule intended to prevent re-litigation of a previously resolved issue. Piech v. Layendecker, 456 N.J. Super. 367, 380 (App. Div. 2018). Because interlocutory orders are subject to reconsideration until final judgment is entered, they do not ordinarily constitute law of the case. Lombardi v. Masso, 207 N.J. 517, 539 (2011). Thus, the trial judge was not required to accept plaintiff's controverted facts and this did not violate her due process rights. State v. K.P.S., 221 N.J. 266, 280 (2015) (explaining the law of the case doctrine "must conform to the due process requirements of our State

Constitution," that is, a party must be afforded a meaningful opportunity to be heard).

We also reject Bissell's argument that she would have changed trial strategies and tactics and may have requested a jury trial had the requests not been deemed admitted. Bissell was aware of Dean's responses to her requests for admissions because he sent those untimely responses to her in 2021. More to the point, Bissell knew the issues that were in dispute at trial and she had a full opportunity to present her evidence. None of the requests for admissions proved that Dean had sexually assaulted her, she had a contract for employment with Saga, or she was subject to gender discrimination or retaliation.

2.    The Default Against Saga.

A default was entered against Saga in January 2021. That default, however, did not enter a monetary judgment against Saga. Consequently, Bissell still had to prove that she was damaged by Saga.

A court may set aside an entry of default for good cause shown. R. 4:43-3; N.J. Mfrs. Ins. Co. v. Prestige Health Grp., LLC, 406 N.J. Super. 354, 360 (App. Div. 2009) (granting an exception for good cause where defendants submitted the answer, filing fee, and moved to vacate the default). Generally, a decision to vacate a default or default judgment lies within the discretion of the

trial court, guided by principles of equity. Coryell, L.L.C. v. Curry, 391 N.J. Super. 72, 79 (App. Div. 2006). An application to set aside a default should be viewed "with great liberality." MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 333 (App. Div. 2023) (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 333 (1993)).

After hearing all the evidence at trial, the trial judge ruled that Bissell had not proven damages against Saga because the court determined neither Dean nor Klassen was liable. We discern no abuse of discretion with those findings nor any error of law.

3.      The Motion for a New Trial.

To determine whether a plaintiff is entitled to a new trial, courts consider "whether denying a new trial 'would result in a miscarriage of justice shocking to the conscience of the court.'" Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 103 (2023) (quoting Township of Manalapan v. Gentile, 242 N.J. 295, 305 (2020)); see also R. 4:49-1(a) (explaining that "[t]he trial judge shall grant the motion [for a new trial] if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law").

Appellate courts apply that same standard in reviewing a trial court's denial of a motion for a new trial. Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011). In doing so, we give considerable deference to the trial court's "feel for the case," and draw all reasonable inferences in favor of upholding the verdict. Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). No deference, however, is given to the trial court's "legal reasoning" or conclusions. Hayes v. Delamotte, 231 N.J. 373, 387 (2018).

Bissell argues she should have been granted a new trial because of the trial court's errors regarding Dean's admissions and Saga's default resulted in "clear prejudice." Specifically, she contends she would have proceeded differently at trial and would not have waived her right to a jury trial. Finally, Bissell claims the trial court's verdict dismissing her claims was "inconsistent and contrary to the weight of the evidence" presented at trial.

Having already considered her arguments concerning the admissions and Saga's default, we conclude the trial court did not err in denying her motion for a new trial. Indeed, the determination was consistent with the evidence adduced at trial, namely that, she could not prove her claims regarding the assault, Saga's

31

failure to hire her as marketing director, or that she had a contract for employment.

4.     The Assignment of a Particular Trial Judge.

In her last argument, Bissell contends that the denial of her motion to have the motion judge try the case constituted an abuse of discretion. She asserts she would have received more favorable rulings, and a better outcome had the motion judge presided at trial. We reject those arguments.

Bissell has cited no law requiring that a judge who has heard motions in a civil matter should preside over the trial of the matter. While there may be good reasons to have one judge handle as many aspects of a case as possible, there are also many practical reasons for not requiring that practice in all cases. In short, the procedural and practical issues concerning which judge will try a matter are committed to the discretion of trial judges, their presiding judges, and their assignment judge. R. 4:5B-1 (providing actions are assigned to a designated judge, who will then preside over the matter "until completion of discovery"); see generally State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012) (explaining a trial "court may exercise broad discretion in controlling its calendar").

A-0024-24

In this matter, the presiding judge considered but denied Bissell's request. We discern no abuse of discretion in that decision and certainly no grounds to reverse the judgment entered after trial.

## III.

Next, we address Dean's and Klassen's cross-appeals and separate appeals. We point out that the cross-appeals and appeals raise the same issues and Dean and Klassen repeat the same arguments, with a few minor, non-material exceptions. Moreover, Dean and Klassen, who are both representing themselves, make many contentions not relevant to the issues presented in the underlying matter and cite to cases and law that have no relevance. Accordingly, we will not attempt to summarize all their arguments. Instead, we focus on whether their counterclaims had any substantive merit.

### A.    Our Standard of Review.

On September 10, 2021, the motion judge entered an order granting summary judgment to Bissell and dismissing Dean's and Klassen's counterclaims with prejudice.[4] The motion judge based the dismissal on the statute of limitations for slander and the litigation privilege.

---

[4] We note the trial court initially stated that he was treating Bissell's motion as a motion to dismiss Dean's and Klassen's counterclaims. The record shows,

We review a grant of summary judgment using the same standard that governs the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion court's legal analysis. RSI Bank, 234 N.J. at 472 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

---

however, that the court considered materials beyond the pleadings. Accordingly, we analyze the motion under the summary judgment standard.

A-0024-24

B.    Dean's and Klassen's Counterclaims.

As already noted, Dean and Klassen asserted seven counterclaims:  (1) and (2) slander; (3) malicious prosecution; (4) abuse of process; (5) intentional infliction of emotional distress; (6) tortious interference with potential business relationships; and (7) a "[p]rima [f]acie" tort.  The slander claims were barred by the applicable statute of limitations and all the other claims, except the malicious prosecution claim, were barred by the litigation privilege.  The material undisputed facts establish that the malicious prosecution claim was properly dismissed on summary judgment.

1.    The Slander Claims.

To recover under a claim of slander, a claimant must "demonstrate three elements:  (1) the defendant 'made a false and defamatory statement;' (2) 'the statement was communicated to another person (and not privileged);' and (3) the defendant acted with fault [under] either a negligence or actual malice standard." Bank, 481 N.J. Super. at 430-31 (quoting G.D. v. Kenny, 205 N.J. 275, 292-93 (2011)).  "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him [or her] or by deterring others from wanting to

associate or deal with him [or her]." Id. at 430 (quoting Petro-Lubricant Testing Lab'ys, Inc. v. Adelman, 233 N.J. 236, 253 (2018)).

A claim of slander must be brought within one year of the publication of the alleged slander. In that regard, the governing statute of limitations states: "Every action at law for libel or slander shall be commenced within [one] year next after the publication of the alleged libel or slander." N.J.S.A. 2A:14-3.

Dean and Klassen contended that Bissell's allegations of sexual assault by Dean are false and caused them damages. They also allege that Bissell "falsely accused [them] of intentionally fabricating false allegations that Bissell was being investigated for fraud." Bissell's false allegations were both publicized in August 2017. They filed their counterclaims asserting slander over two years later on August 9, 2019. Consequently, the motion judge correctly dismissed those claims as time barred.

2.     The Litigation Privilege.

The litigation privilege protects statements made in pleadings filed with the court and judicial proceedings and provides that those statements cannot form the basis for a claim or cause of action because they are privileged. Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563 (1990). The privilege applies to statements that would otherwise be considered "defamatory and

malicious." Hawkins v. Harris, 141 N.J. 207, 214 (1995) (quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957)). Consequently, the privilege applies to any communications made in a judicial or quasi-judicial proceeding by litigants or other authorized participants related to achieving the objectives of the litigation and that have some connection or logical relationship to the litigation. Id. at 216. The privilege is "not limited to statements made in a courtroom" but extends to all statements and communications made in connection with a judicial proceeding, including documents prepared in connection with those proceedings. Ibid.; Durand Equip. Co. v. Superior Carbon Prods., Inc., 248 N.J. Super. 581, 584 (App. Div. 1991).

The factual predicate for all of Dean's and Klassen's other counterclaims is that Bissell falsely, maliciously, or improperly asserted or used her domestic violence complaint against Dean and as a result Dean and Klassen were injured by that action. In that regard, the abuse of process claims alleged that Bissell filed a false domestic violence complaint against Dean and made "improper," "illegal," and "perverted" use of the domestic violence procedures to further her civil claims against Dean and Klassen. Under their intentional infliction of emotion distress counterclaim, Dean and Klassen assert that Bissell filed a false domestic violence complaint against Dean and falsely accused Klassen and Dean

A-0024-24

of spreading accusations that she was under investigation for fraud. In their tortious interference counterclaim, defendants again assert that Bissell falsely accused Dean of sexual assault "to intentionally interfere with Saga's pursuit of business in the hedge fund industry." Finally, in their prima facie tort counterclaim, Dean and Klassen assert that Bissell's conduct in pursuing her domestic violence complaint against Dean was "willful and malicious."

All the statements Dean and Klassen allege in support of their other counterclaims are based on statements and or actions Bissell took in pursuing her domestic violence complaint against Dean and her actions in the underlying lawsuit in this matter. Consequently, all the factual allegations required to support the claims of abuse of process, intentional infliction of emotional distress, tortious interference, and a prima facie tort, are protected by the litigation privilege. Consequently, the motion judge did not err in dismissing those claims based on the litigation privilege.

The litigation privilege does not apply to the counterclaim for malicious prosecution. See Baglini v. Lauletta, 338 N.J. Super. 282, 297 (App. Div. 2001) (explaining "[t]he one tort excepted from the reach of the litigation privilege is malicious prosecution"). Indeed, the New Jersey Supreme Court has recognized that although the litigation privilege serves the important policy of safeguarding

"free access to judicial and quasi-judicial bodies," it must yield for a claim of malicious prosecution to prevent vexatious and baseless suits. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 564-66 (1955).

Nevertheless, we affirm the dismissal of the malicious prosecution claim for an alternative reason. To establish malicious prosecution, a claimant must prove four elements: (1) a criminal or civil action was instituted against the claimant; "(2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably" to the claimant. Lobiondo v. Schwartz, 199 N.J. 62, 90 (2009). When the underlying action is civil, the claimant must also show that he or she "suffered a special grievance caused by the institution of the underlying civil claim." Ibid. A special grievance has been defined as "consisting of 'interference with one's liberty or property.'" Turner v. Wong, 363 N.J. Super. 186, 205 (App. Div. 2003) (quoting Penwag Prop. Co., Inc. v. Landau, 76 N.J. 595, 598 (1978)). Moreover, a special grievance is an injury different from loss of reputation. Ibid. Instead, the loss must be a loss of the ability to practice in a profession. Ibid.

The record establishes that neither the domestic violence proceedings nor Bissell's claims in this matter lack probable cause or were filed with malice. A judge reviewed and found probable cause to issue the TRO in the domestic

39

violence matter. The matter then proceeded to trial, and it was only after a review of all the evidence that Bissell's request for an FRO under the PDVA was dismissed. The record establishes that there was at least probable cause to pursue the claim and there was no basis for a malicious prosecution related to the domestic violence action.

In this civil matter, the trial judge expressly found that Bissell's claims were not maliciously filed. In considering Dean's and Klassen's request to reinstate their counterclaims, the judge found that Bissell had a legitimate basis to pursue her claims and although she failed to prove them following a trial, they did not lack probable cause. That determination is further supported because Dean and Klassen repeatedly moved for summary judgment to dismiss Bissell's claims, but those motions were repeatedly denied. The denial of a motion for summary judgment usually establishes there are no grounds to contend that the claims being asserted were frivolous or without basis. See Noren v. Heartland Payment Sys., Inc., 448 N.J. Super. 486, 498 (App. Div. 2017) (quoting United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 394 (App. Div. 2009)) (explaining "[a] pleading cannot be deemed frivolous as a whole nor can an attorney be deemed to have litigated a matter in bad faith where . . . the trial

court denies summary judgment on at least one count in the complaint and allows the matter to proceed to trial").

Dean's and Klassen's reliance on our decision in Brown v. Brown is misplaced. 470 N.J. Super. 457 (App. Div. 2022). In Brown, we held that the litigation privilege "does not protect a litigant from a subsequent suit seeking redress for injuries caused by an adversary's very act of commencing and prosecuting the earlier suit if that suit was frivolous, vexatious or tortious." Id. at 464. As already explained, Bissell's PDVA complaint and her claims in this matter were not frivolous.

In summary, an analysis of Dean's and Klassen's counterclaims establishes that those counterclaims were properly dismissed. We therefore affirm the September 10, 2021 order dismissing with prejudice all the counterclaims asserted by Dean and Klassen.

C.    Dean's and Klassen's Other Contentions.

In their extensive and repetitive briefs filed in support of their cross-appeals and their appeals, Dean and Klassen also raised numerous contentions. Some of those contentions can be summarily analyzed. The remaining contentions lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

A-0024-24

Dean's and Klassen's principal arguments raised in their cross-appeals and appeals include: (1) the trial court violated Rule 1:7-4 in dismissing Dean's and Klassen's counterclaims; (2) the statute of limitations for their slander counterclaims should have been equitably tolled; (3) the litigation privilege was inapplicable to their other counterclaims due to the crime-fraud exception and fraud on the court; and (4) that the trial court erred in not granting defendants' motions for summary judgment. We reject all those arguments.

First, defendants argue the motion judge violated Rule 1:7-4 when he dismissed their counterclaims because the judge failed to state sufficient findings of fact and conclusions of law in its oral decision on the record. Rule 1:7-4 requires a trial court to "state clearly its factual findings and correlate them with the relevant legal conclusions." Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 562 (App. Div. 2009) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)).

Here, the motion judge complied with Rule 1:7-4. In that regard, the judge explained that defendants' slander claims were barred by the one-year statute of limitation because the claims were filed two years after Bissell made her allegedly slanderous claims. The court also explained the factual allegations needed to support defendants' other claims were all based on Bissell's PDVA

42

complaint and thus were barred by the litigation privilege. Therefore, the motion judge adequately explained the reasons for his decision.

Next, defendants contend the one-year statute of limitations for their slander claims should have been equitably tolled. They assert that Dean did not receive a copy of the 2017 criminal complaint until March 2021, and had been instructed by a Family Part judge to refrain from contracting Bissell.

A statute of limitations may be equitably tolled if the party was actively misled by its opponent, or if the party was prevented "in some extraordinary way" from asserting his or her rights, or if the party asserted its rights mistakenly in the wrong forum. Barron v. Gersten, 472 N.J. Super. 572, 577 (App. Div. 2022) (quoting F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012)). "Absent a showing of intentional inducement or trickery by [the other party], [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." Ibid. (quoting Binder v. Price Waterhouse & Co., L.L.P., 393 N.J. Super. 304, 313 (App. Div. 2007)).

In this matter, Dean and Klassen failed to demonstrate they were prevented "in some extraordinary way" from asserting their slander claims. Ibid. (quoting F.H.U., 427 N.J. Super. at 379). Moreover, Dean's and Klassen's

A-0024-24

assertion that they did not receive the police report until 2021 is not controlling. Dean was served with the TRO and defended the domestic violence action in 2017. Thus, the statute of limitation had run before Dean and Klassen filed their counterclaims in August 2019. See N.J.S.A. 2A:14-3.

Dean and Klassen also assert that the crime-fraud exception to the attorney-client privilege should have prevented the litigation privilege from applying to their other counterclaims. See N.J.S.A. 2A:84A-20(2)(a) (stating the attorney-client privilege does not apply to communications "in aid of the commission of a crime or a fraud"). The issues here, however, do not involve the attorney-client privilege but whether statements made in furtherance of the litigation were privileged. Thus, the "crime-fraud exception" of N.J.S.A. 2A:84A-20(2)(a) does not apply because there is no issue regarding breaching the attorney-client privilege.

Similarly, Dean and Klassen argue Bissell waived the litigation privilege by committing a fraud on the court by hiding the police reports from them, as well as from several municipal and family court judges in 2017. A fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability [to] impartially [] adjudicate a matter

44

by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).

Dean and Klassen presented no evidence that Bissell fraudulently concealed police reports from them or any judge. More to the point, Dean and Klassen fail to explain how concealment of these documents from municipal and Family Part judges in 2017 is relevant to their arguments on these appeals.

In Dean's and Klassen's cross-appeals, they contend the trial court erred in denying their motions for summary judgment. This argument is moot, as the trial court ultimately dismissed all of Bissell's claims with prejudice in its June 4, 2024 order. See Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)) (explaining an issue is moot when it can have "no practical effect on the existing controversy").

Finally, Dean and Klassen make a series of arguments that have no relation in fact or law to this case. In that respect, defendants argue that Bissell violated the Heart Balm Act, N.J.S.A. 2A:23-1 to -7, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, the Hobbs Act, 18 U.S.C. § 1951, and the New Jersey

Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2, by filing her PDVA complaint. Defendants have also requested this court to take notice of several United States Supreme Court cases that have no relevance to the issues in this matter. See Kousisis v. United States, 605 U.S. 114, 123-35 (2025) (explaining economic loss is not an element of federal wire fraud); Med. Marijuana, Inc. v. Horn, 604 U.S. 593, 601-14 (2025) (discussing what civil remedies are available under federal RICO law, 18 U.S.C. §§ 1961 to 1968).

Some of these laws and cases apply exclusively to criminal matters, and none of them have any factual or legal relevance to this appeal. Indeed, Dean and Klassen did not assert causes of action based on the statutes they now cite, nor do they explain how the statutes are relevant to their claims. Therefore, these arguments do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

After the final judgment was entered, Dean and Klassen filed a series of motions asserting that Dr. Ilardi had lost his psychiatrist license just before he testified at trial and his testimony, therefore, was fraudulent. Because the trial judge rejected all of Bissell's claims, and because Ilardi's testimony was submitted in support of Bissell's claims, the post-trial arguments concerning

Ilardi are moot. "An issue is moot when the 'decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Int'l Bhd. of Elec. Workers Loc. 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 224 (App. Div. 2021) (quoting Redd, 223 N.J. at 104). Moreover, "[c]ourts of this state do not resolve issues that have become moot due to the passage of time or intervening events." State v. Davila, 443 N.J. Super. 577, 584 (App. Div. 2016) (quoting City of Camden v. Whitman, 325 N.J. Super. 236, 243 (App. Div. 1999)).

In summary, having reviewed all the arguments raised by Bissell, Dean, and Klassen, we determine that none of their contentions has merit or support reversing any challenged order. Accordingly, we affirm all the orders challenged on these appeals. To the extent that we have not expressly addressed any of Dean's and Klassen's other arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

47

A-0024-24